Filed 11/1/23  P. v. Olivares CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>FRANCISCO OLIVARES,<br><br>Defendant and Appellant. | B324827<br><br>(Los Angeles County<br>Super. Ct. No. BA205131) |

APPEAL from an order of the Superior Court of Los Angeles County, Curtis Rappe, Judge.  Affirmed.

Sally Patrone, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance Winters, Chief Assistant Attorney General, Susan Pithey, Senior Assistant Attorney General, Steven Matthews and Gary Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

——————————————

In 2002, a jury convicted defendant and appellant Francisco Olivares of attempted willful, premeditated, and deliberate murder. Olivares now appeals from an order denying his petition for resentencing under Penal Code section 1170.95.[1] The trial court concluded Olivares did not make a prima facie showing of eligibility for resentencing. We agree and affirm the trial court order denying Olivares's petition.

**FACTUAL AND PROCEDURAL BACKGROUND**

*The underlying offense*

The following facts are taken from Olivares's petition for resentencing.[2]

"On July 5, 2000, Ricardo Aguilar was at the home of his friends, Michael and Carlos Moreno, on McBride Street in Los Angeles. Ricardo was helping his friend put a new battery in his friend's mother's car. Michael came inside with a panicked look and stated [']the guys from Ford are outside.['] Ford Maravilla and Marianna Maravilla, which is the gang Michael is associated with, are rival gangs.

---

[1] All further undesignated statutory references are to the Penal Code.

Effective June 30, 2022, section 1170.95 was renumbered to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) We therefore refer to the law formerly codified at section 1170.95 as section 1172.6 for the remainder of this opinion.

[2] The statement of facts in Olivares's petition was based on "the Appellate Court's rendition of the facts," "supplemented by the reporter's transcript" from the underlying trial, and "special references." We have omitted the petition's citations to the reporter's transcript.

2

"At around 3:00 p.m., Ricardo went outside to move the car out of the driveway, but the keys were stuck in the ignition. Ricardo went inside to ask his friend for help with the keys. As they were walking back to the car, a black truck drove up to Ricardo and his friend. The person in the passenger's seat asked 'where are you from?' Ricardo said 'nowhere' and started running toward the house. Shots were fired from the truck and everyone ducked for cover.

"After the shooting, Ricardo laid face down with blood coming from his head. He was shot and hit by the bullets. They called 911 and Ricardo was transported to the hospital. He spent 15 days in the hospital recovering."

### The Underlying Proceedings

In March 2001, the People filed a two-count information charging Rafael Madrigal, Jr., and Olivares with attempted murder. The information alleged the attempted murder was committed willfully, deliberately, and with premeditation, and that the offense was committed for the benefit of, at the direction of, and in association with a criminal street gang. As to Olivares, the information alleged a principal personally used and intentionally discharged a firearm, which proximately caused great bodily injury to Aguilar, within the meaning of section 12022.53, subdivisions (b), (c), (d) and (e)(1), and section 12022.5, former subdivision (a)(1).[3] The People proceeded on the theory that Madrigal was the shooter and Olivares was the driver.

The jury found Olivares guilty of attempted murder (§§ 664; 187, subd. (a)) and found true each allegation charged.

---

[3] As to Madrigal, the information alleged firearm enhancements based on his personal use. (§§ 12022.53, subds. (b), (c), & (d); 12022.5, former subd. (a)(1).)

The trial court sentenced Olivares to a state prison term of life for attempted murder, plus 25 years to life for the firearm enhancement.

***Olivares's petition for resentencing***

In February 2022, Olivares filed a petition for resentencing. He contended the jury was instructed on the natural and probable consequences doctrine and that it subsequently convicted him under that theory.

At Olivares's request, the court appointed counsel. Olivares then filed a second petition, arguing that he was eligible for resentencing because "he was not the actual shooter, he did not have the specific mental state to kill, was not a major participant and did not act with reckless indifference to human life." Olivares asserted the prosecutors argued a theory of imputed malice to the jury and "there was no evidence . . . that [Olivares] knew or should have known," as the driver, that Madrigal "was armed or was going to use a firearm."

In its response, the People argued Olivares failed to make a prima facie showing of eligibility because the jury was not instructed on the natural and probable consequences doctrine. Olivares's reply brief asserted the jury was indirectly instructed on imputed malice because the court told jurors they could draw reasonable and logical inferences; Olivares was not a principal because he was not the shooter; the natural and probable consequences doctrine was argued by the prosecutor in her closing argument; the jury may have imputed malice to Olivares because he and Madrigal were both gang members and Madrigal had the requisite specific intent; and the evidence against Olivares regarding his intent was circumstantial.

4

The trial court held a hearing in September 2022. After considering the parties' briefing, portions of the reporter's transcript, and argument, the court found Olivares was ineligible for relief as a matter of law because he was charged and convicted "as a direct aider and abettor with specific intent" and not under the natural and probable consequences doctrine.

## DISCUSSION

### I. Senate Bill Nos. 1437 and 775 and Section 1172.6

Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437) eliminated the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and limited the scope of the felony murder rule. (*People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*); *People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*); *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) The bill amended section 188 by adding the requirement that, except as stated in section 189, subdivision (e), "to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) Senate Bill No. 775 (2021–2022 Reg. Sess.) (Senate Bill 775) expanded Senate Bill 1437's mandate, in part, by eliminating the natural and probable consequences doctrine as a means of finding a defendant guilty of attempted murder. However, a principal in a murder or attempted murder, including an aider or abettor, can still be criminally liable if found to personally possess malice aforethought, whether express or implied. (*People v. Silva* (2023) 87 Cal.App.5th 632, 639–640.)

Senate Bills 1437 and 775 created a procedure, now codified at section 1172.6, to allow a person convicted of murder, attempted murder, or manslaughter under the former law to seek

5

resentencing if the person could no longer be convicted under amended section 188. (*Lewis*, *supra*, 11 Cal.5th at p. 959; *Gentile*, *supra*, 10 Cal.5th at p. 847.) A defendant starts the procedure by filing a petition containing a declaration that, among other things, he or she could not presently be convicted of murder under the current law. (*Strong*, *supra*, 13 Cal.5th at p. 708.) In relevant part, the statute requires the court, "[a]fter the parties have had an opportunity to submit briefings," to "hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).)

## II. Prima Facie Stage and Standard of Review

At the prima facie stage, " ' "the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis*, *supra*, 11 Cal.5th at p. 971.) "While the trial court may look at the record of conviction . . . to determine whether a petitioner has made a prima facie case for section [1172.6] relief, the prima facie inquiry under subdivision (c) is limited." (*Ibid*.) Courts may not reject the petitioner's allegations " 'on credibility grounds' " or engage in " 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id*. at pp. 971–972.) Rather, "[t]he record should be consulted at the prima facie stage only to determine 'readily ascertainable facts,' such as the crime of conviction and findings on enhancements." (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815; see, e.g., *People v. Harden* (2022) 81 Cal.App.5th 45, 54–56

6

[considering jury instructions and verdicts to determine whether defendant made prima facie showing of eligibility]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 106 (*Ervin*) [considering sentencing enhancements, jury instructions, closing arguments, and verdicts at prima facie stage].)  The trial court's denial of a resentencing petition at the prima facie stage " 'is a purely legal conclusion,' " which we review de novo.  (*Ervin*, at p. 101.)

## III. Olivares is Ineligible for Relief Under Section 1172.6 Because He Was Not Convicted of Attempted Murder Under the Natural and Probable Consequences Doctrine

Senate Bill 775 eliminated the natural and probable consequences doctrine as a basis for attempted murder liability.  However, "[d]irect aiding and abetting remains a valid theory of attempted murder after the enactment of Senate Bill No. 775."  (*People v. Coley* (2022) 77 Cal.App.5th 539, 548 (*Coley*).)

"Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing."  (*People v. Lee* (2003) 31 Cal.4th 613, 623 (*Lee*).)  Specific intent crimes, including attempted murder, require an accomplice to " ' "share the specific intent of the perpetrator . . . ." ' "  (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118 (*McCoy*); *People v. Glukhoy* (2022) 77 Cal.App.5th 576, 590 ["the direct aider and abettor must have the same mental state as the actual perpetrator of the charged crime"].)  Therefore, "to be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of

7

attempted murder as an aider and abettor must intend to kill." (*Lee*, *supra*, 31 Cal.4th at p. 624; *McCoy*, *supra*, 25 Cal.4th at p. 1118.)

Accordingly, Olivares was only eligible for relief if he established the jury could have convicted him of attempted murder under the natural and probable consequences doctrine, and not as a direct aider and abettor. (*People v. Montes* (2021) 71 Cal.App.5th 1001, 1007 (*Montes*); *Coley*, *supra*, 77 Cal.App.5th at p. 548.)

### A. The record of conviction conclusively establishes the jury convicted Olivares of attempted murder as a direct aider and abettor

The People charged Olivares with attempting to murder Ricardo Aguilera "unlawfully and with malice aforethought." This was the only crime charged.

CALJIC No. 1.11 instructed the jury that the term "defendant" referred to both Olivares and Madrigal. The trial court further instructed the jury with CALJIC No. 3.00, which explained that "principals" of a crime are equally guilty and include direct perpetrators as well as "[t]hose who aid and abet the . . . [attempted commission] of the crime." CALJIC No. 3.01 instructed that to convict Olivares of aiding and abetting attempted murder, the jury had to find that he aided the commission of the crime "1. With knowledge of the unlawful purpose of the perpetrator, and [¶] 2. With the intent or purpose of committing or encouraging or facilitating the commission of the crime, and [¶] 3. By act or advice, [or, by failing to act in a situation where a person has a legal duty to act,] aids, promotes, encourages or instigates the commission of the [act or] crime."

8

As to "the crime," CALJIC No. 8.66 provided the law on attempted murder: "In order to prove attempted murder, each of the following elements must be proved[:] [¶] 1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being."  The instruction reiterated that the "acts of a person who intends to kill another person will constitute an attempt where those acts clearly indicate a certain, unambiguous intent to kill."  CALJIC No. 17.00 informed the jury that it had to determine separately whether Olivares and Madrigal were guilty of attempted murder.  The jury was not instructed on the natural and probable consequences doctrine or any other theory of imputed malice.

During closing argument, the prosecutor made clear that both Madrigal and Olivares were charged with attempted murder, which required the intent to kill, and the evidence reflected both were guilty of that crime.  Specifically, the prosecutor stated, "I think there is no question that the suspects who committed this particular drive-by shooting intended to kill Ricardo Aguilera."  The prosecutor contended that the defendants' casing of the location of the shooting beforehand, Madrigal asking Aguilar where he was from, and Madrigal pointing a gun at him and "fir[ing] at least four to five different shots at him" demonstrated both defendants intended to kill. The prosecutor further argued Olivares "was actually in charge . . . of what was going to happen because he drove by—he could have left at that point but he came back" and "actually stopped the car to allow the shooter a chance to shoot . . . at his victim."  The prosecutor did not mention the natural and

9

probable consequences doctrine in her closing argument as a basis for liability. She also reminded the jury that it was required to decide separately whether each defendant was guilty.

After the trial court instructed the jury, and after hearing closing arguments, the jury found Olivares guilty of the attempted murder of Aguilera as charged in Count 2. We presume the jury understood and followed the court's instructions in reaching this verdict. (*People v. Sanchez* (2001) 26 Cal.4th 834, 852 (*Sanchez*).) The record of conviction therefore reflects that the jury convicted Olivares of attempted murder as a direct aider and abettor who shared the direct perpetrator's intent to kill.

## B. The record of conviction does not permit the conclusion that the jury imputed malice to Olivares as an aider and abettor of assault

Olivares argues that even if the jury did not convict him of attempted murder under a natural and probable consequences theory, relief is available to him if he was convicted under "any theory" in which the jury imputed malice to him based solely on his participation in the attempted murder. We disagree.[4]

---

[4] Section 1172.6, subdivision (a) provides, in relevant part: "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter may file a petition with the court that sentenced the petitioner to have the petitioner's murder, attempted murder, or manslaughter conviction vacated and to be resentenced on any remaining counts when all of the following conditions apply: [¶]

By its plain terms, section 1172.6, subdivision (a) allows only individuals "convicted of . . . attempted murder under the natural and probable consequences doctrine" to avail themselves of the statute's resentencing procedures. The catch-all phrase in the statute making relief available to a person convicted "under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" applies only to persons convicted of felony murder or murder. (§ 1172.6, subd. (a).) However, even assuming Olivares would be eligible for resentencing if he was convicted of attempted murder under another theory of imputed malice, his arguments fail because the record establishes no such theory was available in this case.

Olivares maintains that under the instructions given, the jury could have convicted him as an aider and abettor of attempted murder even if he only intended to aid an assault. Not so. The record of conviction leaves no room for the possibility that the jury found Olivares intended to aid and abet a crime other than attempted murder.

*People v. Cortes* (2022) 75 Cal.App.5th 198 (*Cortes*) is instructive. In 2005, Cortes drove past a liquor store with three male passengers. (*Id*. at p. 200.) After Cortes slowed to a stop, four or five gunshots were fired from the car, killing one person and missing another. (*Ibid*.) The prosecution argued Cortes was

_____

(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder, murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, or attempted murder under the natural and probable consequences doctrine."

either the actual shooter or an aider and abettor. (*Ibid*.) A jury convicted Cortes of first degree murder and premeditated attempted murder. (*Id*. at pp. 199–200.) The trial court subsequently denied Cortes's section 1172.6 petition for resentencing at the prima face stage. (*Id*. at p. 203.) On appeal, Cortes argued that although the jury was not instructed on the natural and probable consequences doctrine, "the prosecutor's closing arguments were 'equally applicable to appellant having the knowledge and intent to aid and abet in an assault with a firearm the natural and probable consequence of which was his confederate's commission of the murder and attempted murder.' " (*Ibid*.)

The appellate court rejected the argument, finding that "the prosecution did not argue at any point during trial, including closing argument, that a crime other than murder or attempted murder was committed, and no other crime was charged or at issue throughout the trial. In particular, the prosecution did not allege that Cortes aided and abetted an assault with a deadly weapon, and therefore we find no merit in Cortes's suggestion that the jury may have, without instruction, relied on such a charge." (*Cortes*, *supra*, 75 Cal.App.5th at p. 205.) Further, the prosecutor's passing reference to the natural and probable consequences doctrine in closing argument was insufficient to find the jury did not follow the court's instructions when "[n]othing in the charges, the instructions, or the balance of the trial permitted the jury to find Cortes guilty on a theory other than direct aiding and abetting . . . ." (*Id*. at pp. 205–206.)

The record of conviction in Olivares's case reflects circumstances similar to those in *Cortes*. Here, the prosecution argued Olivares was a direct aider and abettor of attempted

12

murder. The jury was not instructed on the natural and probable consequences doctrine. The prosecutor did not charge Olivares or Madrigal with any crime other than attempted murder or argue during closing argument that either defendant committed a crime other than attempted murder. (Cf. *Montes*, *supra*, 71 Cal.App.5th at p. 1007 [petitioner could make § 1172.6 prima facie showing where prosecutor argued in closing that "a reasonable person in appellant's shoes would know that an assault may lead to an attempted murder"].) The prosecutor here did not even make a cursory reference to the natural and probable consequences doctrine in closing argument, as the prosecutor did in *Cortes*.

We therefore reject Olivares's argument that because CALJIC No. 3.01 referred to aiding and abetting the "commission of *a crime*," instead of the "commission of *murder*," there was a possibility the jury could have convicted Olivares of attempted murder based on the conclusion that he intended only to commit some lesser, or different crime. Nothing in the record indicates the jury relied on "some other unidentified and uncharged crime, contrary to the trial court's instructions" to convict Olivares without finding he acted with express malice. (*Cortes*, *supra*, 75 Cal.App.5th at p. 206.) Rather, the jury instructions properly reflected the law: "when guilt [for attempted murder] does not depend on the natural and probable consequences doctrine . . . the aider and abettor must know and share the murderous intent of the actual perpetrator." (*McCoy*, *supra*, 25 Cal.4th at p. 1118.)

Olivares's reliance on *People v. Langi* (2022) 73 Cal.App.5th 972 (*Langi*) and *People v. Maldonado* (2023) 87 Cal.App.5th 1257 (*Maldonado*) for a different result is misplaced. Both cases concerned implied malice crimes. (*Langi*, at p. 983 [second

13

degree implied malice murder]; *Maldonado*, at pp. 1262–1263 [first degree lying-in-wait murder].) The *Langi* and *Maldonado* courts reasoned that because the instructions for the underlying crimes did not require the intent to kill, the aiding and abetting jury instructions left open the possibility that the juries convicted the appellants for intending to aid the perpetrators' intentional acts, which did not necessarily require that the appellants personally acted with the requisite implied malice. (*Langi*, at p. 983; *Maldonado*, at pp. 1263, 1266, 1267.)

Here, CALJIC No. 8.66 required the jury to find the direct perpetrator, Madrigal, acted with the intent to kill. To convict Olivares of attempted murder as a direct aider and abettor, the jury had to conclude under CALJIC No. 3.01 that Olivares knew of Madrigal's intent to kill, and that Olivares aided Madrigal's commission of the crime with the purpose of killing. Thus, in contrast to *Langi* and *Maldonado*, the general aiding and abetting instruction in this case did not create any possibility the jury might convict Olivares without finding that he acted with the requisite intent to kill. (*McCoy*, *supra*, 25 Cal.4th at p. 1118.)

### C. Neither the jury instructions on the sentencing enhancements nor the prosecutor's closing argument suggested the jury could find Olivares guilty based on imputed malice

As we understand his arguments, Olivares contends the jury instructions on the willful, premeditated, and deliberate allegation (§ 664, subd. (a))[5] and the gang enhancement (§ 186.22,

---

[5] Section 664, subdivision (a) imposes life with the possibility of parole as the punishment for attempted willful, deliberate, and premeditated murder.

14

subd. (b)),[6] when combined with the aiding and abetting instruction, allowed the jury to potentially convict him of attempted murder based on imputed malice. This argument is unavailing because it ignores the language of each instruction and, further, would have required the jury to flagrantly disregard the court's other instructions to reach the result Olivares suggests.

The trial court instructed the jury with CALJIC No. 8.67 on the allegation that the attempted murder was willful, deliberate, and premeditated. On appeal, Olivares asserts that the instruction, when combined with CALJIC No. 3.01 on aiding and abetting, allowed the jury to find the allegation true as to Olivares even if it also concluded that only Madrigal acted with "a clear, deliberate intent to kill, which was the result of deliberation and premeditation . . . ."

Even if the jury did not find Olivares personally acted with premeditation and deliberation for purposes of the section 664, subdivision (a) allegation, Olivares still fails to establish that such jury findings would have any bearing on the conviction for attempted murder. CALJIC No. 8.67 expressly informed the jury: "*If you find the defendant guilty of attempted murder*, you must determine whether this allegation is true or not true." (Italics added; *People v. Favor* (2012) 54 Cal.4th 868, 879–880 ["the jury does not decide the truth of the penalty premeditation allegation until it first has reached a verdict on the substantive offense of attempted murder. . . . once the jury finds that an aider

---

**6** Section 186.22, subdivision (b) "prescribe[s] sentence enhancements or alternate penalties of varying length" for persons who commit crimes for the benefit of a gang. (*People v. Renteria* (2022) 13 Cal.5th 951, 962.)

15

and abettor . . . has committed an attempted murder, it separately determines whether the attempted murder was willful, deliberate, and premeditated"].)

Similarly, the prosecutor in closing argument informed the jury it had to reach a decision on attempted murder before moving on to consider whether the attempted murder was willful, deliberate, and premeditated. There is no factual or legal basis to speculate that the jury failed to follow the jury instructions for determining Olivares's guilt as to the primary offense, disregarded the preliminary portion of CALJIC No. 8.67, and used its findings on the willful, deliberate, and premeditated allegation to conclude Olivares was guilty of attempted murder without concluding he shared Madrigal's intent to kill.

Likewise, Olivares argues a portion of the jury instruction on the gang enhancement allowed the jury to conclude it "could find the gang allegation true as to appellant if he intended to assist 'in any criminal conduct by gang members,' not specifically murder." This argument not only misreads and mischaracterizes the instruction, it also does not explain how any findings on the enhancement would have any bearing on the attempted murder conviction.

The trial court instructed the jury that *if* it found the defendants guilty of the charged crimes, it needed to determine whether they also violated section 186.22, subdivision (b). The instruction further indicated that to establish a violation, the People were required to prove: "1. *The defendant is guilty of the underlying crime.* [¶] 2. The defendant committed said crime for the benefit of . . . a Criminal Street Gang. [¶] 3. The defendant acted with the specific intent to promote, further, or assist in any criminal conduct by gang members." (Italics added.) The jury

16

could not reach the language Olivares challenges regarding the "specific intent to . . . assist in any criminal conduct" without first concluding Olivares was guilty of the "underlying crime," attempted murder.

The jury was unequivocally instructed that it must first decide whether Olivares was guilty of the underlying crime, attempted murder, before considering the enhancements. Nothing in the record of conviction indicates the jury may have collapsed its findings on Olivares's attempted murder charge and the enhancements in such a way that it could avoid concluding Olivares intended to aid and abet Aguilera's killing, and thus acted with express malice. We presume the jurors understood and followed the court's instructions and found Olivares guilty of attempted murder—and therefore that he intended to kill— before finding the section 664, subdivision (a) and section 186.22, subdivision (b) allegations true. (*Sanchez*, *supra*, 26 Cal.4th at p. 852.)

Finally, Olivares argues the jury could have imputed malice to him based on the prosecutor's statement in closing argument that Madrigal's and Olivares's gang membership was "very telling and supportive of the identifications that were made of them, which is basically the evidence that . . . strongly shows that the defendants are guilty." Olivares does not elaborate on how this remark could have led the jury to impute malice. The prosecutor's reference to evidence of gang membership to corroborate eyewitness identifications of Olivares was unrelated to the malice requirements for attempted murder. Moreover, the prosecutor unequivocally stated that the gang membership evidence did *not* permit the jury to find "guilt by association" and that she was "not asking [the jury] to find Mr. Madrigal or Mr.

17

Olivares guilty just because they're gang members."  Instead, the prosecutor asked the jury "to find them guilty because the evidence proves that they're guilty and that the gang evidence actually supports all of the other evidence that we have provided in this case."  The jury could not have understood the prosecutor's statements as directing it to convict Olivares of attempted murder solely because he was a gang member.

Olivares cannot establish he was convicted of attempted murder under the natural and probable consequences doctrine or any other theory of imputed malice.  His petition fails to make a prima facie showing of his eligibility for resentencing under section 1172.6 as a matter of law.

## DISPOSITION

The trial court order is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EDMON, P. J.

LAVIN, J.